IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CLARENCE L. HUDLOW,          )<br>)<br>Plaintiff,          )<br>v.          )<br>)<br>MICHAEL J. ASTRUE,          )<br>Commissioner of the Social          )<br>Security Administration,          )<br>)<br>Defendant.          ) | Case No. CIV-10-175-SPS |

## OPINION AND ORDER

The claimant Clarence L. Hudlow requests judicial review of the decision of the Commissioner of the Social Security Administration denying his application for benefits under the Social Security Act pursuant to 42 U.S.C. § 405(g). The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining that he was not disabled. As discussed below, the Commissioner's decision is REVERSED and the case is REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence has been interpreted by the United States Supreme Court to require "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court may not reweigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if his impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), he is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that he lacks the residual functional capacity (RFC) to return to his past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account his age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was born on September 7, 1957, and was fifty-two years old at the time of the administrative hearing. He has an eighth grade education and has worked as an equipment operator, truck driver, chicken catcher, and rock hauler (Tr. 15, 29). The claimant alleges that he has been unable to work since March 1, 2006, because of hypertension, sleep apnea, a blockage in his heart, dizzy spells, and a hernia (Tr. 154).

### Procedural History

On January 9, 2008, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. His applications were denied. ALJ John Belcher conducted an administrative hearing and determined the claimant was not disabled in a decision dated December 11, 2009. The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had severe impairments (coronary artery disease, ischemic cardiac disease,

hypertension, and obesity) but retained the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b), *i. e.*, he could lift/carry and /push/pull ten pounds frequently and twenty pounds occasionally, and stand/walk/sit at six hours in an eight-hour workday, but could crouch and crawl frequently, and climb, balance, stoop, and kneel occasionally, and he would need to change his postural position at will (Tr. 13). The ALJ concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was other work he could perform in the national economy, *i. e.*, rental car deliverer, mobile lounge driver, bookmobile driver, information clerk, merchandise marker, and ticket taker. (Tr. 15-16).

### Review

The claimant contends that the ALJ erred: (i) by failing to properly consider the opinion of his treating physician Dr. Gerald Rana, D.O.; (ii) by failing to discuss much of the relevant probative evidence; and (iii) by finding that he could perform light work. The Court finds that the ALJ *did* fail to properly analyze the medical evidence of record.

Dr. Rana began treating the claimant for hypertension and heart disease in June 2006 (Tr. 296). In August 2007, the claimant complained he was "dizzy all the time." In May 2008, the claimant reported headaches, upset stomach, dizziness, and falling down (Tr. 312). During the course of the claimant's treatment, Dr. Rana ordered several blood tests and a sleep study. The claimant's triglycerides were routinely very high (Tr. 329, 334, 361, 423). On July 9, 2008, the claimant was taking several medications, including toprol, hydralazine, hydrochlorothiazide, humulin, tricor, clonidine, and meclizine (Tr.

364-65).  On July 13, 2008, the claimant reported discomfort and chest pain spreading from his mid-chest into his right arm and tingling in his right arm and leg (Tr. 363).

Dr. Rana submitted a form entitled "Description of Chest Discomfort – Evidence of Claudication" on February 10, 2009 (Tr. 514-15).  Dr. Rana indicated the that claimant had severe episodes of chest pain, with shortness of breath and weakness, lasting from minutes to hours and occurring with increased stress and short periods of exertional effort (Tr. 514).  Dr. Rana noted that the claimant was having daily episodes but had suffered from such episodes for years (Tr. 514).  Dr. Rana also noted he had no plans to perform an exercise stress test on the claimant, citing the records of Dr. James Higgins as reason he felt such a test was contraindicated (Tr. 515).

A medical opinions from a treating physician such as Dr. Rana should be afforded controlling weight if "the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003).  The pertinent factors are: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or

contradict the opinion.  *Watkins*, 350 F.3d at 1300-01, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001).  "[I]f the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so."  *Watkins,* 350 F.3d at 1301, *citing Miller v. Chater,* 99 F.3d 972, 976 (10th Cir. 1996), *quoting Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir. 1987).  Dr. Rana had been treating the claimant for heart disease since 2006, and there are numerous records reflecting this treatment, but the ALJ did not even *mention* Dr. Rana, let alone analyze his comments about the severity of the claimant's heart impairment, *e. g.*, when the ALJ concluded that there was "no indication from any treating or examining source that [the claimant's] alleged restrictions could be caused by cardiovascular difficulties (Tr. 14).

　　The ALJ also mischaracterized evidence that he *did* discuss.  For instance, the ALJ noted that consultative examiner Dr. Gann opined that the claimant's obesity "had a lot to do with his fatigue" and cited the claimant's weight loss at his second examination with Dr. Gann in an apparent effort to discount claimant's complaints regarding fatigue (Tr. 14).  But Dr. Gann actually stated that the claimant's obesity *may* contribute to his fatigue while also noting his "very high" blood pressure and his instructions to the claimant to report to the emergency room "if he develops chest pain at this time or if he develops any type of visual or dizziness of any type" (Tr. 264).  Furthermore, Dr. Gann noted that the claimant continued to have fatigue and shortness of breath even after losing weight (Tr. 494-96).  The ALJ further relied on a statement in a reviewing physician's assessment that the claimant "no longer complained of chest pain" (Tr. 14), but the claimant *did*

voice complaints of chest pain contemporaneously to Dr. Rana (Tr. 514-15).  Indeed, the claimant was hospitalized for chest pain four months after the physical assessment cited by the ALJ (Tr. 363).  It is worth noting here that the ALJ is simply not free to ignore probative evidence that does not support his findings.  *Clifton v. Chater,* 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."), *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984).  Nor is the ALJ free to make speculative inferences from medical reports as he did regarding the source of claimant's fatigue.  *See McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002).

Finally, the ALJ apparently relied on the opinion of the state reviewing physician Dr. Luther Woodcock, M.D., but it is unclear what weight he assigned to *any* of the other medical opinions of record.  "[T]he agency requires ALJs to weigh *all* medical source opinion evidence and explain in their decision why they rely on a particular non-examining agency expert's opinion when opinions are conflicting." *Shubargo v. Barnhart*, 161 Fed. Appx. 748, 754 (10th Cir. 2005) [unpublished opinion] [emphasis added], *citing* 20 C.F.R. § 404.1527(f); *Hamlin v. Barnhart*, 365 F.3d 1208, 1223 (10th Cir. 2004); *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996).

Because the ALJ failed to properly analyze substantial medical evidence of record, the decision of the Commissioner must be reversed and the case remanded to the ALJ for further analysis.  If such analysis results in any adjustments to the claimant's RFC, the

ALJ should re-determine what work the claimant can perform, if any, and ultimately whether he is disabled.

## Conclusion

In summary, the Court finds that correct legal standards were not applied by the ALJ, and the decision of the Commissioner is therefore not supported by substantial evidence.  Accordingly, the decision of the Commissioner is hereby REVERSED and the case is REMANDED for further proceedings consistent herewith.

**DATED** this 30th day of September, 2011.

Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma